UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/18/2023
```

SECURITIES INVESTOR PROTECTION
CORPORATION,

                    Plaintiff-Applicant,

          -against-                                        1:20-cv-04767-MKV

BERNARD L. MADOFF INVESTMENT                    **OPINION AND ORDER DENYING**
SECURITIES LLC,                                 **MOTION TO WITHDRAW THE**
                                                **REFERENCE WITHOUT PREJUDICE**
                    Defendant.

In re                                           Adv. Pro. No. 8-1789 (CGM)
                                                SIPA LIQUIDATION (Subs. Consolidated)
BERNARD L. MADOFF,

                    Debtor.                     Adv. Pro. No. 10-4709 (CGM)

IRVING H. PICARD, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
and Bernard L. Madoff,

                    Plaintiff,

          -against-

ANDREW W. GOODMAN,

                    Defendant.

MARY KAY VYSKOCIL, United States District Judge:

          This fraudulent conveyance adversary proceeding was commenced in the bankruptcy court

by Plaintiff-Trustee Irving H. Picard (the "Trustee") against Defendant Andrew M. Goodman

("Defendant") in connection with the substantively consolidated liquidation of Bernard L. Madoff

Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15

U.S.C. §§ 78aaa *et seq.* Before the Court is Defendant's Motion to Withdraw the Bankruptcy

Reference pursuant to 28 U.S.C. § 157(d). (Notice Mot. Withdraw Ref. [ECF No. 1].) For the

reasons discussed below, the Motion is DENIED without prejudice to renewal when the case is ready for trial.

## **BACKGROUND**

The following facts and procedural history are adduced from the parties' submissions in connection with the present Motion, including memoranda of law and exhibits.  *See Haynes v. Chase Bank USA, N.A.* (*In re Haynes*), Nos. 14 CV 4171(VB), 14 CV 6183(VB), 14 CV 7525 (VB), 2015 WL 862061, at *1 (S.D.N.Y. Mar. 2, 2015) (drawing facts from parties' memoranda of law and accompanying exhibits on motion to withdraw the reference); *Aeritas, LLC v. AMR Corp.* (*In re AMR Corp.*), No. 12 Civ. 8180, 2013 WL 1155434, at *1 n.1 (S.D.N.Y. Mar. 21, 2013) (same).

The Trustee commenced this adversary proceeding by filing the Complaint on December 1, 2010, alleging that Defendant was a beneficiary of the massive Ponzi scheme perpetrated by Bernard L. Madoff.   (Compl. ¶¶ 1–2 [ECF No. 1-3].)   Specifically, the Trustee alleges that Defendant maintained an account with BLMIS (Compl. ¶ 34) and received transfers from BLMIS totaling over $800,000 in fictious profits from the Ponzi scheme (Compl. ¶ 36).   The Trustee alleges several causes of action for fraudulent transfer.  (Compl. ¶¶ 40–77.)

Defendant previously moved to withdraw the reference in November 2011 by joining in the Motion for Mandatory Withdrawal of Reference in *Picard v. Abel*, No. 11-cv-07766 (S.D.N.Y.). Joinder in Motion for Mandatory Withdrawal of Reference at 1–2, *Picard v. Goodman*, No. 11-cv-08014-JSR (S.D.N.Y. Nov. 8, 2011), ECF No. 1.  After the *Abel* action was consolidated with more than 100 related actions, the defendants jointly filed an Amended Motion to Withdraw the Bankruptcy Reference, wherein they raised constitutional objections to the bankruptcy court's jurisdiction to resolve the fraudulent conveyance claims asserted in the complaints.   *See*

Defendants' Memorandum of Law in Support of Amended Motion to Withdraw Bankruptcy Reference at 9–15, *Picard v. Abel*, No. 11-cv-07766 (S.D.N.Y. Apr. 2, 2012), ECF No. 14. Defendant's individual motion was denied on August 4, 2014. *See* Order, *Picard v. Goodman*, No. 11-cv-08014-JSR (S.D.N.Y. Aug. 4, 2014), ECF No. 7.

On August 13, 2015, Defendant filed the Answer, asserting forty-six affirmative defenses and demanding a jury trial. (*See generally* Answer [ECF No. 1-4].) Discovery closed on December 16, 2019. (Tr.'s Mem. Law Opp. Def.'s Mot. Withdraw Ref. ("Tr.'s Br.") 4 [ECF No. 5].) Defendant did not file a claim in bankruptcy court against the BLMIS customer property estate. (Tr.'s Br. 4.)

Defendant has filed this Motion to Withdraw the Bankruptcy Reference, arguing that he has a right to a jury trial under the Seventh Amendment and that the bankruptcy court lacks jurisdiction to conduct a jury trial or enter a final judgment in the case. (Mem. Law Supp. Def.'s Mot. Withdraw Ref. ("Def.'s Br.") 1 [ECF No. 1-1].) Having received no response to the Motion, the Court ordered the Trustee to file an opposition. (Order [ECF No. 3].) After several months, the Trustee filed a brief in opposition arguing, *inter alia*, that Defendant has consented to the bankruptcy court entering final judgment in the case. (Tr.'s Br. 4–9.) Defendant filed a reply on November 20, 2020. (Reply Mem. Law Supp. Def.'s Mot. Withdraw Ref. ("Def.'s Reply") [ECF No. 7].)

## **LEGAL STANDARD**

District courts "have original but not exclusive jurisdiction of all civil proceedings arising under [T]itle 11, or arising in or related to cases under [T]itle 11." 28 U.S.C. § 1334(b). In this district, all proceedings arising under Title 11 are automatically referred to the bankruptcy court. *See* Amended Standing Order of Reference, M10-468 (S.D.N.Y. Jan. 31, 2012) (Preska, *C.J.*). The

3

district court's power to withdraw the reference is governed by 28 U.S.C. § 157, which provides standards for mandatory and permissive withdrawal. With respect to permissive withdrawal, "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). The statute does not define "cause." The Second Circuit has instructed that, in determining whether cause exists, several factors should be considered: "whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law." *Orion Pictures Corp. v. Showtime Networks, Inc.* (*In re Orion Pictures Corp.*), 4 F.3d 1095, 1101 (2d Cir. 1993); *accord In re Murphy*, 482 F. App'x 624, 628 (2d Cir. 2012) (summary order).

In deciding whether to withdraw the bankruptcy reference, courts must first determine "whether the case involves a core or non-core proceeding." *Lehman Bros. Holdings, Inc. v. Intel Corp.* (*In re Lehman Bros. Holdings, Inc.*) ("*Lehman Bros. v. Intel*"), 18 F. Supp. 3d 553, 557–58 (S.D.N.Y. 2014) (quoting *Orion*, 4 F.3d at 1101). By statute, bankruptcy judges have authority to hear and determine core proceedings. 28 U.S.C. § 157(b)(1). "[C]ore proceedings are those that arise in a bankruptcy case or under Title 11." *Stern v. Marshall*, 564 U.S. 462, 476 (2011); *see also Joremi Enters., Inc. v. Hershkowitz* (*In re New 118th LLC*), 396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008) (noting that "a core proceeding is one that invokes a substantive right under [T]itle 11, or could only arise in the context of a bankruptcy case" (citing *Binder v. Price Waterhouse & Co., LLP* (*In re Resorts Int'l, Inc.*), 372 F.3d 154, 162–63 (3d Cir. 2004); and *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 96–97 (5th Cir. 1987))). Section 157 "contains a non-exhaustive list of core proceedings," *Bankr. Servs., Inc. v. Ernst & Young* (*In re CBI Holding Co., Inc.*), 529 F.3d 432,

4

460 (2d Cir. 2008), including "proceedings to determine, avoid, or recover fraudulent conveyances," 28 U.S.C. § 157(b)(2)(H).

Even if the proceeding is a core proceeding, however, the district court must "also consider whether the bankruptcy court has the power to enter a final judgment." *Haynes*, 2015 WL 862061, at *2 (citing *Stern*, 564 U.S. at 482). In *Stern*, the Supreme Court clarified that a bankruptcy court's power to issue final judgment does not solely depend on whether a claim is core or non-core, but whether resolution of the claim by the bankruptcy court would improperly involve the exercise of Article III judicial power. *See* 564 U.S. at 503; *In re WonderWork, Inc.*, No. 16-13607-SMB, 2020 WL 13719273, at *1 (S.D.N.Y. Jan. 23, 2020). Thus, bankruptcy courts may lack *constitutional* authority to enter final judgment over certain claims otherwise characterized as "core."[1] *See Stern*, 564 U.S. at 476–78, 487–99, 502–03. Accordingly, "post-*Stern*, district courts must," in addition to the factors set forth in *Orion*, "further analyze whether the nature of the core proceeding allows the bankruptcy court to issue a final judgment." *Picard v. BAM L.P.* (*In re Bernard L. Madoff Inv. Secs. LLC*), 612 B.R. 257, 262–63 (S.D.N.Y. 2020) (internal quotation marks and alterations omitted) (quoting *Picard v. Saren-Lawrence*, Nos. 17 Civ. 5162 (GBD), 17 Civ. 5163 (GBD), 2018 WL 2383141, at *3 (S.D.N.Y. May 15, 2018)); *see also Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 490 B.R. 46, 57 (S.D.N.Y. 2013) (noting that because "the classification of a claim as core or non-core no longer definitively determines whether the [b]ankruptcy [c]ourt may enter final judgment, courts should instead look 'at whether, under *Stern*, the [b]ankruptcy [c]ourt has the final power to adjudicate [the claim at issue]'" (final alteration in original) (quoting *Dev.*

---

[1] The Supreme Court has twice revisited *Stern*. First, in *Executive Benefits Insurance Agency v. Arkison*, 573 U.S. 25, 30–31 (2014), the Court held that when confronted with a "*Stern* claim"—"a claim designated for final adjudication in the bankruptcy court as a statutory matter, but prohibited from proceeding in that way as a constitutional matter"— the bankruptcy court's proper role "is to issue proposed findings of fact and conclusions of law. The district court will then review the claim *de novo* and enter judgment." In *Wellness International Network, Ltd. v. Sharif*, 575 U.S. 665, 669, 673–74 (2015), the Court held that parties may validly consent to the bankruptcy court's adjudication of *Stern* claims.

*Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 467 (S.D.N.Y. 2011))). Following *Stern*, "a bankruptcy court may enter final judgment only (1) if the claim involves a public right; (2) the process of adjudicating the creditor's proof of claim would resolve a counterclaim; or (3) the parties consent to final adjudication by the bankruptcy court." *Pryor v. Tromba*, No. 13–CV–676 (JFB), 2014 WL 1355623, at *3 (E.D.N.Y. Apr. 7, 2014) (collecting cases); *Dynegy Danskammer, LLC v. Peabody COALTRADE Int'l Ltd.*, 905 F. Supp. 2d 526, 530 (S.D.N.Y. 2012) (citing *Stern*, 564 U.S. at 482, 493, 497). Accordingly, "in evaluating a motion to withdraw post-*Stern*, the principal question is no longer whether the claim in question is 'core' or 'non-core' pursuant to the Bankruptcy Code but whether the bankruptcy court has *constitutional authority* to enter final judgment on the claims at issue." *Lehman Bros. Holdings, Inc. v. JPMorgan Chase Bank (In re Lehman Bros. Holdings, Inc.)* ("*Lehman Bros. v. JPMorgan*"), 480 B.R. 179, 188–89 (S.D.N.Y. 2012); *see also Pryor*, 2014 WL 1355623, at *3 ("[A]fter *Stern*, the relevant inquiry under the first prong of the *Orion* test is not whether a matter is core or non-core, but whether the bankruptcy court has the authority to finally adjudicate the matter." (citing *Penson Fin. Servs., Inc. v. O'Connell (In re Arbco Capital Mgmt.)*, 479 B.R. 254, 262 (S.D.N.Y. 2012))); *Dynergy Danskammer*, 905 F. Supp. 2d at 530 ("[T]his Court joins the other courts that have applied a modified analysis of the core/non-core factor under *Orion* to account for the Article III requirements and exceptions articulated in *Stern*.").

After making the core/non-core and final-judgment determinations, district courts "'should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors,' such as the presence of a jury demand." *BAM L.P.*, 612 B.R. at 262 (quoting *Lehman Bros. v. Intel*, 18 F. Supp. 3d at 557). This determination ultimately "comes down to whether efficiency and

uniformity would be better served by litigating in the district court." *Haynes*, 2015 WL 862061, at *2 (citing *Orion*, 4 F.3d at 1101; and *Mishkin v. Ageloff*, 220 B.R. 784, 800 (S.D.N.Y. 1998)).

"District courts have 'broad discretion to withdraw the reference for cause.'" *Id.* (quoting *Official Comm. of Unsecured Creditors of Enron Corp. v. Lay* (*In re Enron Corp.*), 295 B.R. 21, 25 (S.D.N.Y. 2003)).  The movant bears the burden of showing that permissive withdrawal of the reference is warranted.  *Lehman Bros. v. Intel*, 18 F. Supp. 3d at 557–58 (citing *Nisselson v. Salim* (*In re Big Apple Volkswagon, LLC*), No. 12 Civ. 92, 2013 WL 1245548, at *3 (S.D.N.Y. Mar. 25, 2013)).

## **DISCUSSION**

Defendant claims that withdrawal of the bankruptcy reference is warranted because the bankruptcy court lacks constitutional authority to enter final judgment in the case.  (Def.'s Br. 5.)  Defendant argues that he has not consented to a jury trial conducted by the bankruptcy court or the bankruptcy court entering final judgment because he (1) objected to the bankruptcy court's jurisdiction by filing an earlier motion to withdraw the bankruptcy reference, which the district court (Rakoff, *J.*) denied (Def.'s Reply 1–6), and (2) deliberately did not file a claim against the BLMIS customer property estate to avoid an argument that he consented to the bankruptcy court entering final judgment (Def.'s Br. 3).  Defendant argues further that all *Orion* factors support withdrawal because the case is trial ready.  (Def.'s Br. 6–7.)  The Trustee argues that Defendant impliedly consented to the bankruptcy court's final adjudicative authority by actively litigating the Trustee's claims in the bankruptcy court for nearly a decade.  (Tr.'s Br. 6–9.)  The Trustee argues in the alternative that even absent final adjudicative authority, the bankruptcy court could preside over the proceeding and submit a report and recommendation for the Court's review.  (Tr.'s Br. 10–13.)

## A. Core/Non-core & Final Adjudicative Authority

The bankruptcy court lacks constitutional authority to adjudicate the Trustee's fraudulent conveyance claims. As a threshold matter, this action, as a fraudulent conveyance action, is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(H); *see also, e.g.*, *Brick v. Ring* (*In re Nat'l Risk Assessment, Inc.*), Nos. 14-11886 (CLB), 1:18-cv-932, 2019 WL 234659, at *2 (W.D.N.Y. Jan. 16, 2019) (noting that "the parties agree that the fraudulent transfer . . . claims are core proceedings"); *Saren-Lawrence*, 2018 WL 2383141, at *5 ("[A]ctions to avoid fraudulent transfers are 'core' proceedings."). But none of the three *Stern* exceptions in which a bankruptcy court may enter final judgment apply here.

### 1. Public or Private Right

First, it is now well established that fraudulent conveyance claims involve private, not public, rights. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 55 (1989) (finding that "a bankruptcy trustee's right to recover a fraudulent conveyance . . . [is] more accurately characterized as a private rather than a public right"); *see also Stern*, 564 U.S. at 492 ("In *Granfinanciera* we rejected a bankruptcy trustee's argument that a fraudulent conveyance action filed on behalf of a bankruptcy estate against a noncreditor in a bankruptcy proceeding fell within the 'public rights' exception."); *Weisfelner v. Blavatnik* (*In re Lyondell Chem. Co.*), 467 B.R. 712, 720 (S.D.N.Y. 2012) (noting that "fraudulent conveyance . . . claims do not fall within the public rights exception"); *Kirschner v. Agoglia* (*In re Refco, Inc.*), No. 11 Civ. 8250, 2012 WL 1622496, at *3 (S.D.N.Y. May 9, 2012) ("To now conclude that the very claim presented in *Granfinanciera*—a fraudulent conveyance claim—is a 'public rights' claim would be totally at odds with the *Stern* Court's analogy to *Granfinanciera*."); *Adelphia Recovery Tr. v. FLP Grp., Inc.*, No. 11 Civ. 6847(PAC), 2012 WL 264180, at *4 (S.D.N.Y. Jan. 30, 2012) (noting that "a fraudulent

transfer claim involves a private right") (collecting cases); *Dev. Specialists, Inc. v. Orrick, Herrington & Sutcliffe, LLP*, No. 11 civ. 6337(CM), 2011 WL 6780600, at *3 (S.D.N.Y. Dec. 23, 2011) (finding that a fraudulent conveyance claim involved private rights).

### 2. Proof of Claim

The second *Stern* exception is inapplicable because Defendant "did not submit a customer claim against the BLMIS customer property estate, which the Trustee acknowledges."  (Tr.'s Br. 6.)  *See Messer v. Bentley Manhattan Inc.* (*In re Madison Bentley Assocs., LLC*), 474 B.R. 430, 438–39 (S.D.N.Y. 2012) ("Courts in this district have consistently held that, after *Stern*, bankruptcy courts lack authority to issue final judgments on fraudulent conveyance claims brought against a person who has not submitted a claim against the estate."); *see also Pereira v. Garritano* (*In re Connie's Trading Corp.*), No. 14 Civ. 376(LAK)(GWG), 2014 WL 1813751, at *8 (S.D.N.Y. May 8, 2014) ("The second *Stern* exception appears to be inapplicable here as well, as it appears neither [defendants] have filed proofs of claim against [the] estate."); *Pryor*, 2014 WL 1355623, at *5 ("This exception is not applicable here as defendant has not filed a proof of claim against the estate to be resolved in connection with this adversary proceeding.").

### 3. Consent

Third, Defendant has not consented to the bankruptcy court entering final judgment.  *See Wellness Int'l*, 575 U.S. at 669.  Consent must be "knowing and voluntary" and can be "express or implied."  *Id.* at 685.  In determining whether a litigant impliedly consented to the final adjudicative authority of the bankruptcy court, "the key inquiry is whether 'the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case.'"  *Id.* (quoting *Roell v. Withrow*, 538 U.S. 580, 590 (2003)).  Long before *Wellness International*, the Second Circuit instructed that "a court should not lightly infer from a litigant's

conduct consent to have private state-created rights adjudicated by a non-Article III bankruptcy judge." *Men's Sportswear, Inc. v. Sasson Jeans, Inc.* (*In re Men's Sportswear, Inc.*), 834 F.2d 1134, 1138 (2d Cir. 1987); *see also Exec. Sounding Bd. Assocs. Inc. v. Advanced Mach. & Eng'g Co.* (*In re Oldco M. Corp.*), 484 B.R. 598, 609 (Bankr. S.D.N.Y. 2012) (noting that "implied consent should not be easily found").

Courts generally hold that a litigant impliedly consents to the bankruptcy court's entry of final judgment by appearing before the bankruptcy court and failing to raise a constitutional objection to its jurisdiction. *See, e.g.*, *In re Tribune Media Co.*, 902 F.3d 384, 395 (3d Cir. 2018) (noting that "a litigant impliedly consents to jurisdiction by appearing before the bankruptcy court 'without [any] objection'" (alteration in original)) (collecting cases); *In re Delta Produce, L.P.*, 845 F.3d 609, 617 (5th Cir. 2016) (holding that a litigant impliedly consents to bankruptcy jurisdiction when he "raise[s] no constitutional objection when joining the case"); *see also, e.g.*, *Sears v. Sears* (*In re AFY, Inc.*), 902 F.3d 884, 890 (8th Cir. 2018) ("The plaintiffs impliedly consented to adjudication of their rights in the bankruptcy court, because they did not raise a constitutional challenge to the court's authority despite numerous opportunities." (citing *Delta Produce*, 902 F.3d at 395)). The timing of a litigant's objection is critical. The Supreme Court has highlighted "the consequences of 'a litigant . . . "sandbagging" the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor.'" *Stern*, 564 U.S. at 482 (ellipsis in original) (quoting *Puckett v. United States*, 556 U.S. 129, 134 (2009)). Therefore, courts have found implied consent where a party litigates before the bankruptcy court and objects to its jurisdiction only after receiving an unfavorable final ruling. *See id.* ("Instead [of objecting], Pierce repeatedly stated to the Bankruptcy Court that he was happy to litigate there. We will not consider his claim to the contrary, now that he is sad."); *Lynch v. Mascini Holdings*

*Ltd.* (*In re Kirwan Offices S.à.R.L.*), 792 F. App'x 99, 103–04 (2d Cir. 2019) (summary order) (finding implied consent because the party "voluntarily presented [shareholder agreement] claims to the bankruptcy court, and because his objection to the court's jurisdiction came only after it entered the confirmation order"); *In re Millennium Lab Holdings*, 575 B.R. 272, 294 (Bankr. D. Del. 2017) ("To the extent that Voya intended to keep its constitutional objection in its back pocket to be used on appeal if it was not successful before me, such gamesmanship is prohibited, establishes intent and implied consent and therefore constitutes waiver.") (collecting cases).

Here, Defendant has raised multiple constitutional objections to the bankruptcy court's jurisdiction during this litigation, which militates against a finding of implied consent.  First, Defendant moved to withdraw the reference in November 2011 by joining in the Motion for Mandatory Withdrawal of Reference in *Picard v. Abel*, No. 11-cv-07766 (S.D.N.Y.).  (Def.'s Reply 3.)  Joinder in Motion for Mandatory Withdrawal of Reference at 1–2, *Picard v. Goodman*, No. 11-cv-08014-JSR (S.D.N.Y. Nov. 8, 2011), ECF No. 1.  That motion was denied in August 2014. *See* Order, *Picard v. Goodman*, No. 11-cv-08014-JSR (S.D.N.Y. Aug. 4, 2014), ECF No. 7.

Second, Defendant joined the omnibus motion to dismiss proceedings before the bankruptcy court, wherein the defendants objected to the bankruptcy court's jurisdiction with respect to avoidance actions against Defendant and others, arguing that "fraudulent conveyance claims must be adjudicated by an Article III court."  Defendants' Omnibus Memorandum of Law in Support of Motions to Dismiss at 20–22, *Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC* (*In re Bernard L. Madoff*), 531 B.R. 439 (Bankr. S.D.N.Y. June 2, 2015) (Case No. 08-99000, Adv. No. 10-4709-smb), ECF No. 25.  *See Secs. Inv. Prot. Corp.*, 531 B.R. at 458 (finding that certain defendants "did not impliedly consent to the entry of a final judgment, much less a default

11

judgment" where they "filed timely motions to dismiss, and raised the issue of the [bankruptcy court's] authority to enter a final judgment in their motions").

Third, Defendant now objects again through the present Motion.  (*See generally* Def.'s Br.) While the parties' submissions do not specify whether Defendant intends to move for summary judgment, had he so moved before the bankruptcy court, Defendant would have risked a finding that he impliedly consented to the bankruptcy court's final adjudicative authority.  *See True Traditions, LC v. Wu*, 552 B.R. 826, 838 (N.D. Cal. 2015) (finding implied consent where litigant "challenged the bankruptcy court's jurisdiction earlier in the proceeding" but then "sought final judgment in its favor without ever mentioning consent"); *Conti v. Perdue Bioenergy, LLC* (*In re Clean Burn Fuels, LLC*), 540 B.R. 195, 199 n.2 (Bankr. M.D.N.C. 2015) (finding that defendant's filing a motion for summary judgment constituted implied consent to the bankruptcy court's entry of final judgment, even though defendant objected to entry of final judgment in its answer); *Haley v. Barclays Bank Del.* (*In re Carter*), 506 B.R. 83, 88 (Bankr. D. Ariz. 2014) (finding that litigant impliedly consented to entry of final judgment despite constitutional objection because, "by its motion for summary judgment, [it] specifically asked the [bankruptcy] [c]ourt to enter final judgment").  Defendant would have run the same risk had he waited until after resolution of the Trustee's anticipated motion for summary judgment.  *See Buckskin Realty, Inc. v. Greenberg*, Nos. 18-CV-3166 (FB), 18-CV-3886 (FB), 2019 WL 4917891, at *2 (E.D.N.Y. Sept. 30, 2019) (finding implied consent where litigant "*never* challenged the bankruptcy court's jurisdiction in the bankruptcy proceeding" (emphasis added)).  And if the Trustee's anticipated motion was resolved against him, Defendant likely would have been accused of sandbagging the court.  *See Stern*, 564 U.S. at 482; *Lynch*, 792 F. App'x at 103–04; *In re Millennium Lab Holdings*, 575 B.R. at 294.

12

Moreover, Defendant explicitly stated in the Answer, filed in August 2015, that he "does not consent to the entry of final orders or judgment by the Bankruptcy Court." (Answer ¶ 5.) This explicit objection weighs against a finding of implied consent. *See Ball v. Soundview Capital Mgmt.* (*In re Soundview Elite Ltd.*), 594 B.R. 108, 121 (Bankr. S.D.N.Y. 2018) (finding defendant did not impliedly consent to bankruptcy court's jurisdiction in part because "he explicitly contested the [b]ankruptcy [c]ourt's jurisdiction over him" in his answer).

The cases on which the Trustee relies—*BAM L.P.*, 612 B.R. 257, and *Picard v. Grieff*, 617 B.R. 198 (S.D.N.Y. 2020)—are inapposite. (*See* Tr.'s Br. 7–8.) There, the defendants filed claims against the BLMIS customer property estate, and that fact was central to those courts' decisions. *See Grieff*, 617 B.R. at 206; *BAM L.P.*, 612 B.R. at 266 n.10. Here, however, Defendant did not file such a claim—or any counterclaim—specifically to preserve his right to Article III adjudication. (Def.'s Br. 3; Def.'s Reply 3.) In citing *Grieff* and *BAM L.P.* and arguing that Defendant consented by his conduct, the Trustee emphasizes the duration of the proceedings before the bankruptcy court and Defendant's efforts during discovery. (Tr.'s Br. 7–9.) Defendant had no choice but to conduct discovery in the bankruptcy court given that his prior motion to withdraw the reference was denied. Moreover, the courts in *Grieff* and *BAM L.P.* only noted the length of the proceedings after having already concluded that the defendants consented by filing customer claims against the estate. *See Grieff*, 617 B.R. at 206–07; *BAM L.P.*, 612 B.R. at 260, 266 & n.10. Defendant's repeated constitutional objections distinguish this case from those where courts have found implied consent following extensive proceedings before the bankruptcy court. *Cf. Ariston Props., LLC v. Messer* (*In re FKF 3, LLC*), 501 B.R. 491, 499–500 (S.D.N.Y. 2013) (finding implied consent where the litigant "failed to object during *any* of the 'extensive proceedings' before the bankruptcy court" (emphasis added)) (collecting cases); *In re Tyson*, 433 B.R. 68, 76–

77 (S.D.N.Y. 2010) (finding implied consent where litigant did not object to bankruptcy court's jurisdiction before or during trial or during post-trial motion practice in the bankruptcy court).

Finally, Defendant demands a jury trial, and "where a jury right is asserted, any consent to final adjudication in Bankruptcy Court must be express." *Dev. Specialists*, 462 B.R. at 470; *see* 28 U.S.C. § 157(e) (providing that bankruptcy judges may conduct jury trials "if specially designated . . . by the district court and with the express consent of all the parties"); *see also Soundview Capital*, 594 B.R. at 121 (finding defendant did not impliedly consent to bankruptcy court's jurisdiction in part because he "explicitly demanded a jury trial under Federal Rules of Civil Procedure Rule 38(a)" (citing *Dev. Specialists*, 462 B.R. at 469–70; and 28 U.S.C. § 157(e)); *SNMP Research Int'l, Inc. v. Nortel Networks Inc.* (*In re Nortel Networks Inc.*), No. 09–10138(KG), 2015 WL 3506697, at *4 (Bankr. D. Del. June 2, 2015) ("The request by [plaintiffs] for a jury trial adds to the Court's unwillingness to find that [plaintiffs] ha[ve] impliedly consented to the Court's authority."); *cf. Weisfelner*, 467 B.R. at 722 (noting that implied consent is insufficient under Federal Rule of Bankruptcy Procedure 7012(b), which requires express consent for a bankruptcy court to enter final judgment in non-core matters).

In short, Court concludes that Defendant has not impliedly consented to the bankruptcy court entering final judgment because Defendant (1) raised multiple constitutional objections to the bankruptcy court's authority to do so, (2) explicitly stated in the Answer that he does not consent to the bankruptcy court's jurisdiction, (3) did not file a customer claim against the bankruptcy estate, and (4) demands a jury trial.  Furthermore, because none of the three *Stern* exceptions apply, the Court holds that the bankruptcy court lacks final adjudicative authority over the Trustee's fraudulent conveyance claims and that final judgment must be entered by an Article III court.

## B.  Other *Orion* Factors

A determination that the bankruptcy court lacks authority to enter final judgment does not mandate withdrawal of the bankruptcy reference.  *Mazer-Marino v. Macey* (*In re Jacoby & Meyers—Bankr. LLP*), No. 15-cv-7144 (RA), 2017 WL 4838388, at *4 (S.D.N.Y. Oct. 25, 2017) (collecting cases); *Sheldrake Lofts LLC v. Remediation Capital Funding, LLC*, No. 14–cv–4274 (NSR), 2014 WL 6450340, at *2 (S.D.N.Y. Nov. 15, 2014).  While it may lack final adjudicative authority, "[t]he bankruptcy court [may] hear the proceeding and submit proposed findings of fact and conclusions of law to the district court for *de novo* review and entry of judgment."  *Exec. Benefits*, 573 U.S. at 36; *see also In re Ne. Indus. Dev. Corp. v. ParkStone Capital Partners, LLC* (*In re Ne. Indus. Dev. Corp.*), 511 B.R. 51, 53 (S.D.N.Y. 2014) ("The [b]ankruptcy [c]ourt may hear the case in the first instance and recommend proposed findings of fact and conclusions of law for final adjudication in the District Court." (citing 28 U.S.C. § 157(c)(1))); *Walker, Truesdell, Roth & Assocs. v. Blackstone Grp.* (*In re Extended Stay, Inc.*), 466 B.R. 188, 204–05 (S.D.N.Y. 2011) ("[A] bankruptcy court may still propose findings of fact and conclusions of law to the district court where it lacks authority to enter a final judgment." (citing 28 U.S.C. § 157(c)(1); and *U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc.* (*In re U.S. Lines, Inc.*), 197 F.3d 631, 636 (2d Cir. 1999))).  That is so even where, as here, a party demands a jury trial, because "assertion [of the jury trial right] . . . does not detract from [the bankruptcy court's] power to issue proposed findings of fact and conclusions of law . . . .  The right to a jury trial is implicated only if the party survives a dispositive motion, such as a summary judgment motion."  *In re Big Apple Volkswagen, LLC*, No. 11-11388 (JLG), 2016 WL 1069303, at *8 (Bankr. S.D.N.Y. Mar. 17, 2016).

Considering the remaining *Orion* factors, the Court finds that withdrawal of the reference is not appropriate at this time.

### 1. Judicial Efficiency

First, considerations of judicial efficiency strongly weigh against withdrawal of the reference.  "[A]s a general matter, the [b]ankruptcy [c]ourt is more familiar with avoidance claims, which are customarily adjudicated by bankruptcy courts because they are core proceedings." *Nisselson*, 2013 WL 1245548, at *6 (citing 28 U.S.C. § 157(b)(2)(F), (H)).  Indeed, the Second Circuit has explained that "hearing core matters," like avoidance claims, "in a district court could be an inefficient allocation of judicial resources given that the bankruptcy court generally will be more familiar with the facts and issues."  *Orion*, 4 F.3d 1101; *accord Pryor*, 2014 WL 1355623, at *7.  It is especially inefficient to withdraw the reference where, as here, the bankruptcy court has extensive experience with a particular litigation.  *See, e.g.*, *Grieff*, 617 B.R. at 207–08; *Mazer-Marino*, 2017 WL 4838388, at *5; *Haynes*, 2015 WL 862061, at *3.

This adversary proceeding has been before the bankruptcy court for over ten years.  (Tr.'s Br. 1, 7–8, 10.)  In addition, the bankruptcy court has, as of the briefing on this Motion, overseen the resolution of more than 700 related adversary proceedings, resolved over 230 motions to dismiss and numerous discovery-related motions, and conducted several trials on similar issues.  (Tr.'s Br. 11.)  Indeed, other courts in this district have recognized the bankruptcy court's expertise in this SIPA liquidation.  *See Grieff*, 617 B.R. at 207; *BAM L.P.*, 612 B.R. at 265.  This experience and expertise "will inform the [b]ankruptcy [c]ourt's recommendations, which will therefore be of particular value to the District Court in making its ultimate determination on the matter."  *In re Ne. Indus. Dev. Corp.*, 511 B.R. at 54 (citing Amended Order, *Lehman Bros. Special Fin. Inc. v. Fed. Home Loan Bank of Cincinnati* (*In re Lehman Bros. Holdings Inc.*), No. 13 Civ. 4121, at 3–4 (S.D.N.Y. Mar. 27, 2014), ECF No. 30); *see Grieff*, 617 B.R. at 207–08 ("[H]aving overseen the resolution of over 700 adversary proceedings since 2014, including resolving over 230 motions to

16

dismiss, various discovery-related motions, conducting a trial on various claims issues, including net equity, and most recently conducting a trial in two consolidated good faith cases, Judge Bernstein is 'undoubtedly more familiar' with the factual and legal issues in [this action]."); *Lehman Bros. v. Intel*, 18 F. Supp. 3d at 558 (declining to withdraw the reference and emphasizing the bankruptcy court's "experience with the Lehman bankruptcies and related adversary proceedings"); *Pryor*, 2014 WL 1355623, at *7 (denying motion to withdraw the reference where the bankruptcy court "has administered the adversary proceeding for approximately over two years, overseen discovery, held hearings, has the motions for summary judgment before it, and is more intimately familiar with the facts, circumstances, and legal issues surrounding the Debtor's bankruptcy case and the adversary proceeding" (citing *Weisfelner*, 467 B.R. at 723–24; and *Walker, Truesdell, Roth & Assocs.*, 466 B.R. at 206)).

Defendant argues that it would be more efficient to withdraw the reference because Judge Bernstein is retiring.  (Def.'s Reply 7.)  He has now retired.  This argument is unconvincing. Defendant notes that, as of briefing on this Motion, Judge Bernstein had already referred two Madoff adversary proceedings to former Chief Judge Morris.  (Def.'s Reply 7.)  Defendant claimed, at the time of his Motion, that "prior to two months ago, [Judge Morris] had absolutely no involvement whatsoever with the Madoff cases."  (Def.'s Reply 7.)  But Defendant's case, and all other Madoff-related adversary proceedings, are now before Judge Morris.  It likely is true that Judge Morris is not as familiar with this SIPA liquidation and the Madoff adversary proceedings as was Judge Bernstein, who presided over the Madoff cases from 2014 to his retirement in 2022. But having been assigned all Madoff-related cases, coupled with her extensive, distinguished career on the bankruptcy court, former Chief Judge Morris will no doubt be better equipped to assess in the first instance the Trustee's anticipated motion for summary judgment.  *See Mazer-*

*Marino*, 2017 WL 4838388, at *5 (noting that the bankruptcy court's "experience with claims of this nature would be useful in handling this case in an efficient manner") (collecting cases); *In re Ne. Indus. Dev. Corp.*, 511 B.R. at 54 (emphasizing the bankruptcy court's general "expertise with adversary proceedings," which "is entitled to respectful consideration" (citing *Secs. Inv. Prot. Corp.*, 490 B.R. at 58)); *Nisselson*, 2013 WL 1245548, at *6 (noting that the bankruptcy court is generally more familiar with avoidance claims than the district court); *see also Weisfelner*, 467 B.R. at 723 (finding that efficiency considerations weighed against withdrawal because the district court "ha[d] not performed any work on the outstanding motions, presided over any pretrial proceedings, or overseen any discovery or motion practice").

Given the bankruptcy court's involvement in this adversary proceeding and this SIPA liquidation, together with its general expertise in adversary proceedings and avoidance claims, the Court finds that it would be incredibly *inefficient* to withdraw the reference at this time.  *See Sheldrake Lofts LLC*, 2014 WL 6450340, at *3 ("[T]he [b]ankruptcy [c]ourt's experience and its familiarity with the complexities of this case will be a valuable resource to this Court in making an ultimate determination on the matter."); *Messer*, 474 B.R. at 440 (denying motion to withdraw the reference where "discovery is now complete and a motion for summary judgment is pending" because "[i]t is more efficient to allow the [b]ankruptcy [c]ourt to provide recommendations on findings of facts and conclusions of law than for this Court to begin anew"); *Lehman Bros. v. JPMorgan*, 480 B.R. at 196 ("Particularly given the bankruptcy court's involvement thus far in the litigation, the Court finds that judicial economy weighs against withdrawing the reference at this time.") (collecting cases).

### 2.  Uniformity of Bankruptcy Administration

Second, for many of the same reasons, considerations of uniformity in bankruptcy administration also weigh against withdrawal of the reference at this time.  Courts recognize that allowing the bankruptcy court to consider "questions of bankruptcy law before they come to the district court for de novo review promotes a more uniform application of bankruptcy law." *Walker, Truesdell, Roth & Assocs.*, 466 B.R. at 207.  Here, specifically, "[t]he bankruptcy court has 'a wealth of knowledge and experience with fraudulent transfer claims,' particularly those arising under the Bankruptcy Code . . . ." *Lehman Bros. v. JPMorgan*, 480 B.R. at 196 (quoting *Adelphia Recovery Trust*, 2012 WL 264180, at *7); *see Pereira*, 2014 WL 1813751, at *11 (finding that "the uniform application of bankruptcy law will be promoted by keeping the case in the bankruptcy court" because several issues were "all issues lying at the heart of the bankruptcy court's competency").  Indeed, "[c]ourts in this [d]istrict have also emphasized intra-case uniformity" and found that "uniformity is clearly served by leaving [similar, related] disputes in the hands of a single court." *Lehman Bros. v. Intel*, 18 F. Supp. 3d at 558–59 (quoting Amended Order, *Lehman Bros. Special Fin. Inc.*, No. 13 Civ. 4121, at 3–4).  Given the other adversary proceedings with avoidance claims in this SIPA liquidation, leaving this matter in the bankruptcy court would promote intra-case uniformity.  *See Ball v. Soundview Composite Ltd.* (*In re Soundview Elite Ltd.*), Nos. 13–13098, 14–CV–3179 SAS, 2014 WL 2998529, at *4 (S.D.N.Y. July 3, 2014) (finding that "denying the motion to withdraw will promote uniformity of bankruptcy administration" because "it would be disruptive to have multiple judges adjudicating separate but related issues in the chapter 11 cases of the debtor and the related entities"); *California v. Enron Corp.* (*In re Enron Corp.*), No. 05 Civ. 4079(GBD), 2005 WL 1185804, at *3 (S.D.N.Y. May 18, 2005) (finding that "the uniform administration of the bankruptcy court proceedings weigh[s] in favor of not

withdrawing the reference [because] [t]he [b]ankruptcy [c]ourt has presided over the Enron bankruptcy cases for over three years . . . [and] is more thoroughly familiar with the Debtors [sic] claims and issues in the instant matter and all of the other Enron-related cases").

### 3. Prevention of Forum Shopping

Third, considerations of preventing forum shopping weigh slightly against withdrawal. "As a general rule 'courts should employ withdrawal judiciously in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court.'" *Baxter v. Sherb & Co., LLP* (*In re Money Ctrs. of America, Inc.*), 579 B.R. 710, 713 (S.D.N.Y. 2016) (quoting *Schneider v. Riddick* (*In re Formica Corp.*), 305 B.R. 147, 151 (S.D.N.Y. 2004)). Courts have recognized that "*Stern v. Marshall* has become the mantra of every litigant who, for strategic or tactical reasons, would rather litigate somewhere other than the bankruptcy court." *Moore Macro Fund, LP v. Lehman Bros. Holdings, Inc.* (*In re Lehman Bros. Holdings, Inc.*), No. 14cv5053, 2014 WL 4635576, at *2 (S.D.N.Y. Sept. 5, 2014) (quoting *In re Ambac Fin. Grp., Inc.*, 457 B.R. 299, 308 (Bankr. S.D.N.Y. 2011)).

Defendant argues that by opposing this Motion, "[t]he Trustee is clearly forum-shopping." (Def.'s Reply 7.)  But it is Defendant, not the Trustee, who seeks to change forums.  There is no basis to conclude that keeping the reference in the bankruptcy court, where the debtor's case is pending in which the Trustee purposely commenced this adversary proceeding, encourages forum shopping.  *See Walker, Truesdell, Roth & Assocs.*, 466 B.R. at 206 (finding that "plaintiffs' assertion that withdrawal would prevent forum shopping is baseless because defendants only seek to keep the actions in the forum that plaintiffs filed them in"); *see also Saren-Lawrence*, 2018 WL 2383141, at *6 (finding that "considerations of forum shopping weigh against withdrawal of the

reference, because denying withdrawal will keep the action in the forum in which it was filed" (citing *Walker, Truesdell, Roth & Assocs.*, 466 B.R. at 206)).

The Trustee claims that Defendant is forum shopping because the bankruptcy court recently entered "judgment in favor of the Trustee in two nearly identical proceedings."  (Tr.'s Br. 2, 13.) "The timing of Defendant's Motion," the Trustee argues, "demonstrates his desire to avoid the same result before the [b]ankruptcy [c]ourt."  (Tr.'s Br. 13.)  Moving to withdraw the reference after unfavorable rulings may indicate that a litigant is forum shopping.  *See In re Motors Liquidation Co.*, 538 B.R. 656, 664 (S.D.N.Y. 2015).  But as explained above, Defendant would have risked a court finding that he impliedly consented to the bankruptcy court's final adjudicative authority had he filed this Motion after having moved for summary judgment or having received an unfavorable result on the Trustee's anticipated motion for summary judgment.  *See supra* Discussion, Section A.  Nevertheless, given the recent rulings in favor of the Trustee, withdrawing the reference at this stage would encourage defendants in related adversary proceedings to "us[e] withdrawal as a 'litigation tactic' in hopes of achieving more favorable results."  *Saren-Lawrence*, 2018 WL 2383141, at *6 (quoting *Baxter*, 579 B.R. at 713).  Accordingly, this *Orion* factor counsels slightly against withdrawal.

### 4.  Legal/Equitable and Defendant's Right to a Jury Trial

Finally, Defendant's right to a jury trial does not require withdrawal of the reference at this juncture.  *E.g.*, *Pryor*, 2014 WL 1355623, at *8.  "Whether a dispute is legal or equitable in nature and consequently whether the litigants are afforded the right to a jury trial is another consideration in determining whether the reference should be withdrawn."  *McHale v. Citibank, N.A.*, No. 09 Civ. 6064, 2009 WL 2599749, at *4 (S.D.N.Y. Aug. 24, 2009) (citing *McCord v. Papantoniou*, 316 B.R. 113, 122 (E.D.N.Y. 2004)).  "Under the Seventh Amendment, a creditor's right to a jury trial

on a bankruptcy trustee's preference or fraudulent conveyance claim depends upon whether the creditor has submitted a claim against the estate." *Saren-Lawrence*, 2018 WL 2383141, at *3 (alteration omitted) (quoting *Granfinanciera*, 492 U.S. at 58).  Although a litigant's right to a jury trial, when coupled with a finding that the bankruptcy court lacks constitutional authority to enter final judgment, "might provide '*sufficient* cause to withdraw the reference,' 'such a right *does not compel* withdrawing the reference until the case is ready to proceed to trial.'"  *Lehman Bros. v. JPMorgan*, 480 B.R. at 194 (first quoting *Dev. Specialists*, 462 B.R. at 472; then quoting *Schneider*, 305 B.R. at 150) (collecting cases).  Accordingly, where a litigant asserts a valid jury demand, courts generally refrain from withdrawing the reference until the case is actually trial-ready.  *See Pereira*, 2014 WL 1813751, at *10 (noting that "courts in this District generally deny withdrawal motions where a case is not yet ready for trial") (collecting cases); *Walker, Truesdell, Roth & Assocs.*, 466 B.R. at 198 (noting that "permissive withdrawal to take 'the case to a district court for trial by jury, on asserted Seventh Amendment grounds, will become a question ripe for determination if and when the case becomes trial-ready'" (quoting *O'Connell v. Terranova* (*In re Adelphi Inst., Inc.*), 112 B.R. 534, 538 (Bankr. S.D.N.Y. 1990); and citing *Kenai Corp. v. Nat'l Union Fire Ins. Co.* (*In re Kenai Corp.*), 136 B.R. 59, 61 (S.D.N.Y. 1992))); *Enron Wind Energy Sys., LLC v. Marathon Elec. Mfg. Corp.* (*In re Enron Corp.*), No. 04 Civ. 7950(NRB), 2005 WL 356856, at *5 (S.D.N.Y. Feb. 15, 2005) ("[C]ourts often find 'it appropriate to defer withdrawing the reference until a case is trial ready.'" (quoting *Space Sys./Loral Inc. v. Int'l Launch Servs., Inc.* (*In re Loral Space & Commc'ns*), No. 04 Civ. 04547(PKC), 2004 WL 1586466, at *2 (S.D.N.Y. July 14, 2004); and citing *Enron Power Mktg., Inc. v. City of Santa Clara* (*In re Enron Power Mktg., Inc.*), No. 01 Civ. 7964, 2003 WL 68036, at *10 (S.D.N.Y. Jan. 8, 2003))).

The Trustee's avoidance claims are legal rather than equitable in nature. In addition, Defendant has a valid jury demand because he preserved that right and he did not assert a claim against the BLMIS customer property estate. *See, e.g.*, *Saren-Lawrence*, 2018 WL 2383141, at *3. While Defendant claims that "all pre-trial proceedings have been completed" and the "case is trial ready" (Def.'s Br. 1, 6), the Trustee intends to move for summary judgment (Tr.'s Br. 1, 4, 6, 13). Thus, this case is *not* trial ready and Defendant's demand for a jury trial is premature. Therefore, Defendant's jury trial demand does not mandate withdrawal of the reference at this time. *See Picard v. Palmedo*, No. 20-cv-01926 (PGG) (S.D.N.Y. July 8, 2020), ECF No. 5 (denying motion to withdraw the reference "as premature" because the trustee anticipated moving for summary judgment) (collecting cases); *Brick*, 2019 WL 234659, at *3 ("The court will not withdraw the reference until such time as the case is ready for trial."); *Pryor*, 2014 WL 1355623, at *8 ("[N]othing in defendant's papers suggests that the proceeding is at the pre-trial stage. . . . Th[e] motions [for summary judgment] will have to be disposed of . . . before the Court could decide whether to withdraw the reference on the basis of a jury trial."); *Kirschner v. Agoglia*, 476 B.R. 75, 83 (S.D.N.Y. 2012) (noting that "while Movants cite to their jury demand as a reason to withdraw the reference now, the Court may withdraw the reference if and when a trial is necessary"); *Weisfelner*, 467 B.R. at 717, 725 (denying motion to withdraw the reference where motions for summary judgment were pending and noting that "[i]f and when the defendants assert their jury trial rights and/or the case proceeds to trial, then, the defendants are free to move for withdrawal a second time").

Accordingly, the Court concludes that the *Orion* factors weigh against withdrawal of the reference at this juncture.

## CONCLUSION

Based on the foregoing, Defendant's Motion to Withdraw the Bankruptcy Reference is DENIED without prejudice to renewal when the case is trial ready.  The bankruptcy court shall issue an opinion on the Trustee's anticipated motion for summary judgment.   Should the bankruptcy court conclude that summary judgment is proper, this Court shall review *de novo* a report and recommendation.  After that review, if appropriate, the Court will enter final judgment. Otherwise, Defendant shall renew his Motion to Withdraw the Bankruptcy Reference and this case will proceed to trial.

The Clerk of Court is respectfully requested to close docket entry 1 and terminate the case.


**SO ORDERED.**


**Date:   September 18, 2023**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**

24